UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARCIAL RIOS-GARCIA,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

Case No. 2:26-cv-03809-TMC

ORDER GRANTING WRIT OF HABEAS CORPUS

## I. INTRODUCTION AND BACKGROUND

Petitioner Marcial Rios-Garcia is a 52-year-old citizen of Mexico who, after facing years of abuse due to his sexual orientation, entered the United States without inspection in 1995 to "escape for [his] life." Dkt. 1-1 at 22; Dkt. 1 ¶ 1. After returning to Mexico in 1999 to support his mom with health challenges, Mr. Rios-Garcia "paid a coyote for documentation" to re-enter the United States in March 2003 but was detained by immigration officers who returned him to Mexico. Dkt. 1 ¶ 23; Dkt. 1-1 at 22. He entered the United States a few days later. Dkt. 1-1 at 22; Dkt. 1 ¶ 22. He has lived in this country since then, for over twenty years. Dkt. 1 ¶ 22.

Rios-Garcia met his U.S.-citizen husband in 2006, and they married in 2015. *Id.* ¶¶ 24, 31. He has two U.S.-citizen stepdaughters who rely on him for emotional and financial support. *Id.* ¶ 27; Dkt. 1-1 at 41. Rios-Garcia has work authorization and files taxes. Dkt. 10-1 at 4;

Dkt. 1-1 at 26. Over the past decade, he has worked in the construction industry and provided for his family, as his husband's health challenges make it difficult for him to maintain employment. Dkt. 1-1 at 24. Rios-Garcia has no criminal record. Dkt. 1 ¶ 2; Dkt. 1-1 at 34.

In June 2026, U.S. Department of Homeland Security ("DHS") officers arrested Rios-Garcia. Dkt. 6 ¶ 5; Dkt. 1 ¶ 28. A few days later, the government issued Rios-Garcia a Notice to Appear ("NTA") alleging he was inadmissible, pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), as a noncitizen present in the United States without being admitted or paroled, pursuant to § 212(a)(7)(A)(i)(I). *Id.* ¶ 8. In July, Rios-Garcia submitted applications for cancellation of removal, asylum, withholding of removal under the INA, and protection under the Convention Against Torture ("CAT"). Dkt. 1 ¶ 29; Dkt. 1-1 at 103–138. He also submitted a motion for a custody redetermination ("bond") hearing, seeking release from custody. Dkt. 1 ¶ 30. In August, an Immigration Judge ("IJ") denied Rios-Garcia's applications for relief from removal and granted him voluntary departure, a decision which is currently on appeal with the Board of Immigration Appeals ("BIA"). Dkt. 1-1 at 11; Dkt. 6 ¶ 9.

At Rios-Garcia's bond hearing on September 9, IJ Odell denied Rios-Garcia's request for bond, finding that he presented a flight risk. Dkt. 1-1 at 66–67; Dkt. 10-1 at 3–5. In the IJ's post-decision written memorandum, he explained that Rios-Garcia has "very limited opportunities for relief from removal" as "[a]ll of his applications for relief from removal have been denied and he has been granted voluntary departure." Dkt. 10-1 at 5. Additionally, Rios-Garcia "has a history of providing false documents to circumvent immigration laws, and after he was removed from the United States in 2003, he promptly reentered the United States again illegally." *Id.* For those reasons, the IJ found that "no amount of bail or condition of parole would be sufficient to mitigate the risk of flight." *Id.*

On October 7, 2026, Rios-Garcia filed a petition for writ of habeas corpus, arguing that the IJ "abused his discretion in finding [him] to be a flight risk" and seeking "immediat[e] release[e]." Dkt. 1 at 24. On October 22, 2026, Federal Respondents filed a return to the habeas petition, arguing that the Court should require Rios-Garcia to exhaust his administrative appeal before the BIA before considering his petition. Dkt. 5 at 2. For the reasons set forth below, the Court GRANTS the petition for habeas corpus.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

### A. Prudential exhaustion is not required.

Ordinarily, before turning to federal court, a litigant must first pursue all options available through the appropriate administrative agency. *See, e.g.*, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Respondents argue that Rios-Garcia has failed to exhaust his administrative remedies, and the Court should deny his petition on exhaustion grounds. Dkt. 5 at 4–8. Rios-Garcia argues that exhaustion is not required and requiring exhaustion would cause irreparable injury. Dkt. 1 ¶¶ 7–15.

The Court agrees with Rios-Garcia. First, in a habeas proceeding, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury

will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("[W]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." (citation modified)).

Here, requiring Rios-Garcia to wait until his appeal to the BIA is resolved would unreasonably prolong his detention and likely prove futile. As this Court has observed, in 2024, the average time for an appeal to be resolved by the BIA was 204 days, and that was before the current surge in immigration detention. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025), *aff'd*, 183 F.4th 1160 (9th Cir. 2026). Respondents argue that "the mere passage of time or the delay inherent in the administrative process is insufficient to establish the type of unique, irreparable injury necessary to waive prudential exhaustion." Dkt. 5 at 8. But Respondents fail to acknowledge that the harm suffered by Rios-Garcia is not merely the passage of time. It is the passage of time while detained and separated from his husband, his step-daughters, employment, and the opportunity to better prepare for his BIA appeal. Numerous federal courts have found irreparable harm where lengthy processing times would substantially prolong a petitioner's detention. *See, e.g.*, *W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026); *Garcia Miranda v. Hernandez*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).

**B. IJ Odell abused his discretion by denying bond.**

While Respondents do not meaningfully contest that the IJ abused his discretion in denying Rios-Garcia bond, *see* Dkt. 5, this Court briefly considers the basis for the IJ's bond denial.

The Court's review of a bond determination by an IJ is limited. While factual questions are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). A court may not review underlying factual determinations such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it may review mixed questions of law and fact, "even when [they] are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id.* at 785.

Under BIA precedent, to determine whether a noncitizen is a danger to the community or a risk of flight, an IJ is supposed to weigh nine factors: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

Here, the IJ's decision does not provide a reasoned explanation for the denial of bond or a rational application of the *Guerra* factors to the facts of this case. *See Tadevosyan v. Holder*, 743 F.3d 1250, 1253 (9th Cir. 2014) (holding that, in the context of an immigration appeal, the agency "abuses its discretion . . . when it fails to provide a reasoned explanation for its actions") (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)).

Rios-Garcia presented ample evidence to the IJ that he is not a flight risk, including being married to a U.S.-citizen husband, having two U.S.-citizen children, decades of living in this country, and no criminal history. *See* Dkt. 1-1 at 2–59. Although the manner of entry is a permissible consideration in assessing flight risk, *Guerra*, 24 I. & N. Dec. at 40, the IJ's bond memorandum does not provide a reasoned explanation as to how Rios-Garcia's use of false documents to enter the country over 20 years ago "is connected to his risk of flight today, and the Court can discern no such connection from the record before it." *Rodriguez-Pineda v. Hernandez*, No. C26-2367-MLP, 2026 WL 2321531, at *5 (W.D. Wash. Aug. 11, 2026) (holding that "use of an alias almost thirty years ago" in an "attempt to enter the country" did not show risk of "flight today"); *see also Ramirez v. Blanche*, No. 5:26-CV-03938-DTB, 2026 WL 2395217, at *10 (C.D. Cal. Aug. 17, 2026) (the IJ "failed to explain how Petitioner's entry into the United States," described by the IJ as "surreptitious," "evidences that he is a flight risk"); *Gamitto de Souza v. Wesling*, No. 1:26-cv-12059, Dkt. No. 14 (D. Mass. July 27, 2026) (holding that an IJ's denial of bond due in part to "the fact that Petitioner had allegedly presented false documents when he sought admission to the United States in 2001, approximately twenty-five years ago" where the IJ "failed to address, in any substantive manner, the fact that over twenty-five years have passed since the uncorroborated false documents claim," among other things, "could not, as a matter of law, have supported the [IJ's] decision"); *cf. Khalili v. Barr*, No. 6:19-cv-06373-EAW (W.D.N.Y. 2020) (finding no error in the IJ's bond denial where the IJ discussed

Petitioner's "extensive and well-documented history of engaging in immigration fraud" and "record evidence that . . . demonstrates Petitioner 'will undertake whatever is necessary to achieve his objectives, including fraud against the United States Government,'" among other things). Furthermore, "[n]otably, Petitioner was forthcoming" with the fact that he used a false document to enter the country in 2003 at his bond hearing, "which is arguably more relevant to considerations of [his] risk of flight today." *Rodriguez-Pineda*, 2026 WL 2321531 at *5.

The IJ's reliance on Rios-Garcia's manner of entry is particularly untenable given that nearly 25 years have passed. Concluding that an unlawful entry, "'surreptitious' or otherwise," *Ramirez*, 2026 WL 2395217, at *10, "from [nearly] 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026); *Tadevosyan*, 743 F.3d at 1253. Even if Rios-Garcia's method of entry could have supported a finding of flight risk "in the past" does not mean it "forever" will." *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398–99 (3d Cir. 1999), *amended* (Dec. 30, 1999); *see also Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) (holding that "recency and severity of offenses must be considered").

The IJ's reliance on Rios-Garcia's "limited opportunities for relief from removal" is similarly insufficient. Dkt. 10-1 at 4. "[T]he fact of a removal order—or the lack of potential forms of relief for a potential future removal order—is not sufficient by itself to deny bond or establish flight risk." *Segura Serrano v. Scott*, No. 2:26-cv-01268-LK, 2026 WL 1674357, at *8 (W.D. Wash. May 26, 2026) (cleaned up). And, here, Rios-Garcia has potential opportunities for relief from removal, which he is pursuing through his appeal to the BIA. Dkt. 1 ¶ 44. The IJ "provided no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." *Soriano*, 830 F. Supp. 3d at 1081.

In sum, the Court concludes that the IJ abused his discretion by failing to provide a reasoned explanation for how the undisputed facts establish that Rios-Garcia poses a flight risk. *Tadevosyan*, 743 F.3d at 1253. The Court must review the record to "assess whether an IJ correctly applied the statutory standard to a given set of facts." *Martinez*, 124 F.4th at 782 (quoting *Wilkinson*, 601 U.S. at 221). Because the IJ's application of the risk of flight standard was an abuse of discretion, the Court concludes that release on bond is the appropriate remedy, consistent with the relief ordered by other courts in this district.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.
2. Within ONE day of this Order, Respondents must release Petitioner Marcial Rios-Garcia from custody with reasonable conditions of supervision.
3. Upon his release, Respondents must return to Rios-Garcia any personal property, including any personal identification document (other than a passport) and any employment authorization document.
4. Respondents shall file a status report by November 23, 2026, confirming that Petitioner Marcial Rios-Garcia has been released.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer on any fee request before filing a petition.

Dated this 20th day of November, 2026.

Tiffany M. Cartwright
United States District Judge